**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO:**

**JUSTIN GRANT,**
individually and on behalf of all
others similarly situated,

Plaintiff,

**CLASS ACTION**

**JURY TRIAL DEMANDED**

v.

**10X HEALTH VENTURES, LLC,**

Defendant.
_____________________________________/

**CLASS ACTION COMPLAINT**

Plaintiff Justin Grant brings this class action against Defendant 10X Health Ventures, LLC, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. (the "TCPA"), and the North Carolina Telephone Solicitations Act ("NCTSA"), N.C. Gen. Stat. § 75-100 et seq.

2. Defendant markets and sells consumer goods, products, services, and paid events to consumers nationwide under the 10X brand.

3. To promote its goods, products, services, and paid events, Defendant engages in unsolicited text message marketing and continues to send text solicitations to consumers after they opt out of Defendant's solicitations.

4. Through this action, Plaintiff seeks to recover statutory damages under the TCPA and the NCTSA for himself and the Class of individuals who suffered invasion of privacy, harassment, aggravation, and disruption at the hands of Defendant.

**JURISDICTION AND VENUE**

5. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331.

6. Independently, this Court has original jurisdiction over Plaintiff's NCTSA class claim under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This action is brought as a class action under Fed. R. Civ. P. 23; the proposed NCTSA Class includes more than 100 members; at least one proposed Class member is a citizen of a state different from Defendant; and the aggregate amount in controversy on the NCTSA claim exceeds $5,000,000, exclusive of interest and costs.

7. Plaintiff is a citizen and resident of North Carolina and the NCTSA Class members are citizens and residents of North Carolina. Defendant is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida. In prior public court filings, Defendant and Cardone Ventures, LLC alleged that Cardone Ventures is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida and is Defendant's majority member and manager. *See Cardone Ventures, LLC, et al. v. IJS Presentations, LLC, et al.*, No. 1:24-cv-25091-CMA, ECF No. 1 ¶¶ 1-2 (S.D. Fla. Dec. 26, 2024). Therefore, Defendant is not a citizen of North Carolina.

8. Defendant's own public pleadings and statements support a reasonable inference that the NCTSA Class contains more than 100 members and that the aggregated NCTSA statutory damages exceed $5,000,000. In a federal complaint filed in this District, Defendant and Cardone Ventures alleged that 10X Health products are available through 10X Health branded wellness centers, licensees, e-commerce, and platforms such as Amazon; that the business rapidly expanded in clientele and revenue;

that it grew from 8 to 80 employees in the 14 months; and that 2024 revenue was expected to be approximately $120 million, supported by over 100 employees. *See Cardone Ventures, LLC et al. v. IJS Presentations, LLC et al.*, No. 1:24-cv-25091-CMA, ECF No. 1 ¶¶ 15, 24 (S.D. Fla. Dec. 26, 2024).

9. In a later Miami-Dade County complaint, Defendant and Cardone Ventures alleged that 10X Health was formed with the goal of redefining wellness for millions of people around the world; that after an acquisition, its clientele, employees, revenues, and profits more grew drastically with annual revenues of approximately $25 million in 2022, $75 million in 2023, and $120 million in 2024; and that the number of patients served grew to over 140,000. *See 10X Health Ventures, LLC et al. v. Brecka et al.*, No. 2025-004643-CA-01, Compl. at 2-4 (Fla. 11th Cir. Mar. 17, 2025).

10. Those same public filings tie the 10X Growth Conference solicitations at issue in this case to Defendant's lead-generation ecosystem. Defendant and Cardone Ventures alleged that, after being given the spotlight in front of approximately 34,000 attendees at a 2019 Grant Cardone 10X Growth Conference, Brecka and Streamline were unable to provide products or services to 3,800 people who wanted to work with them. *Id*. at 15. Plaintiff's post opt-out messages here advertised a 10X Growth Conference, demonstrating that the challenged text campaign was part of the same mass lead-generation and sales infrastructure operated by Defendant. *See Cardone Ventures, LLC et al. v. IJS Presentations, LLC et al.*, No. 1:24-cv-25091-CMA, ECF No. 1 ¶ 22 (S.D. Fla. Dec. 26, 2024).

11. Defendant's own website further shows that Defendant collects telephone numbers and uses recurring SMS marketing at scale. Defendant's web forms request first name, last name, email address, and phone number, and ask consumers to agree to receive recurring account notifications, customer care updates, and promotional/marketing text messages from Defendant. www.tfaforms.com/5094146.

12. These facts support CAFA's class-size requirement. As discussed above, Defendant publicly claims that it has served over 140,000 patients. The United States Census Bureau estimates North Carolina's July 1, 2025 population at 11,197,968 and the United States population at 341,784,857, meaning North Carolina represents approximately 3.28% of the United States population. A proportional share of a 140,000-person national patient base would include approximately 4,587 North Carolina consumers. Only 0.072% of a 140,000-person patient base would be needed to yield more than 100 North Carolina class members. Given Defendant's national e-commerce, subscription program, SMS mass marketing, and Defendant's own description of texting as its primary method of communication and marketing, the NCTSA Class contains more than 100 members and, on information and belief, likely thousands.

13. The NCTSA amount in controversy, standing alone, also exceeds $5,000,000. The NCTSA provides statutory damages of $500 for the first violation, $1,000 for the second violation, and $5,000 for the third and each later violation occurring within two years of the first violation, plus injunctive relief and attorney's fees and costs for willful violations. N.C. Gen. Stat. § 75-105(b), (d).

14. Plaintiff's own experiences show that, after his STOP request, Defendant sent him two additional text solicitations, creating at least $1,500 in NCTSA statutory damages for Plaintiff alone.

15. Using NCTSA statutory damages, the $5,000,000 threshold is satisfied if Defendant's records show any one of several conservative estimates based on the North Carolina proportional size discussed above: 3,334 North Carolina class members who, like Plaintiff, received two post-opt-out text solicitations ($5,001,000); or 770 North Carolina class members who received three post-opt-out text solicitations within two years ($5,005,000). These calculations exclude the value of injunctive relief, attorney's fees, costs, and any damages recoverable on Plaintiff's TCPA claims.

16. The Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District, maintains its principal address in Miami, Florida, and a substantial portion of the conduct at issue was directed, controlled, or implemented from this District.

**PARTIES**

17. Plaintiff is a natural person who, at all times relevant to this action, was a citizen and resident of Davidson County, North Carolina. Plaintiff's cellular telephone number ending in 0704 (the "0704 Number") has a 336 area code, which is geographically associated with North Carolina. Plaintiff was in North Carolina when he received Defendant's text messages alleged herein.

18. Defendant is a foreign limited liability company organized under Delaware law and registered to conduct business in Florida. Defendant is a "telephone solicitor" under the NCTSA because it does business in North Carolina and makes or causes telephone solicitations to North Carolina telephone subscribers like Plaintiff.

## FACTS

19. As depicted below, Defendant sent multiple text messages to Plaintiff's cellular telephone number ending in 0704 ("0704 Number") after Plaintiff as Defendant to "STOP":




20. Specifically, Plaintiff asked Defendant to stop texting him on January 20, 2025, but Defendant sent him two (2) text messages on March 19, 2025.

21. Plaintiff reasonably revoked his consent to receive text messages from Defendant. Notwithstanding, Defendant continued to send text messages for the purpose of encouraging Plaintiff to purchase Defendant's goods, products, services, or events.

22. Plaintiff never opted back into text messages from Defendant after his initial "STOP" request.

23. Given Defendant's use of an automated text messaging platform, as reflected by the auto-reply opt-out confirmations Plaintiff received, depicted above, Defendant had the ability to

immediately opt Plaintiff out of further communications but chose not to do so. Accordingly, it was unreasonable for Defendant to continue texting Plaintiff given its ability to immediately opt Plaintiff out and its representation to Plaintiff that he had been opted out of further communications.

24. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

25. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

26. Defendant sent at least two solicitations after Plaintiff's initial opt-out request.

27. Plaintiff is the regular user of the 0704 Number.

28. Plaintiff utilizes the 0704 Number for personal purposes and the number is Plaintiff's residential telephone line. Plaintiff has no land-line phone number and this number is his only way to contact him when he is home.

29. Plaintiff's 0704 Number has been listed on the National Do Not Call Registry since December 23, 2011.

30. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its goods, products, services, and events. These reports show the dates, times, target telephone numbers, message content, campaign identifiers, and opt-out status for each message sent to Plaintiff and the Class members.

31. Defendant's failure to honor opt-out requests demonstrates that Defendant does not 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and/or (3) maintain a standalone do-not-call list.

32. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests caused Plaintiff and the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

33. Defendant did not maintain procedures for handling and processing text message opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made opt-out requests and the requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages for months.

34. Plaintiff and the Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

35. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

36. Defendant's use of generic text messages further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

37. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

38. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

39. Defendant would be able to send automated text messages to consumers, and in compliance with the NCTSA, by securing the proper consent from consumers prior to sending text messages and by honoring opt-out instructions.

40. Accordingly, it is not impossible for Defendant to comply with the NCTSA in the context of transmitting text messages.

41. The burden and cost to Defendant of securing consent from consumers that complies with the NCTSA is nominal.

42. Compliance with the NCTSA will not result in Defendant having to cease its business operations.

43. Compliance with the NCTSA will not result in Defendant having to alter the prices of any goods or services it provides in the marketplace.

44. Compliance with the NCTSA will not force Defendant to seek regulatory approval from before undertaking any type of commercial transaction.

45. Defendant sent the same or similar text messages to Plaintiff and each putative Class member in that the content of the messages consisted of advertising Defendant's goods, products, services, and events.

46. Defendant’s text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

47. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

48. Plaintiff brings this case on behalf of the Classes defined as follows:

> **<u>Internal Do Not Call Class</u>: All persons within the United States who, within the four years prior to the filing of this action, (1) were sent more than one text message within any 12-month period, (2) regarding Defendant's goods, products, services, and/or events, (3) to said person's residential cellular telephone number, (4) after making a request to Defendant to not receive future text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**

> **<u>DNC Class</u>: All persons in the United States who, within the four years prior to the filing of this action through the date of class certification, (1) were sent more than one text message within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (3) regarding Defendant's goods, products, services, and/or events; (4) to said person's residential cellular telephone number; (5) after making a request to Defendant to not receive further text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**

> **<u>NCTSA Class</u>: All persons in North Carolina who, within the four years prior to the filing of this action through the date of class certification, as telephone subscribers, received one or more text message telephone solicitations from or on behalf of Defendant regarding Defendant's goods, products, services, or events to said person's telephone number after communicating to Defendant that they did not wish to receive further telephone solicitations by replying to a message with "stop" or a similar opt-out instruction.**

49. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

50. Defendant and its employees or agents are excluded from the Classes. Publicly available facts described above - including Defendant's public allegations that it served over 140,000 patients, generated approximately $120 million in 2024 revenue, grew through e-commerce and national marketing, used recurring SMS marketing forms, operated through clinics, licensees, affiliates, and 200+ partner locations, and used text messaging as a primary communication channel - support a reasonable inference that the proposed Classes contain many thousands of members and that the NCTSA Class alone contains more than 100 members and likely thousands.

**<u>NUMEROSITY</u>**

51. Upon information and belief, Defendant has sent automated, recurring text solicitations to tens of thousands of consumers nationwide, including North Carolina telephone subscribers. Defendant's public allegations that it has served over 140,000 patients, combined with North Carolina's approximately 3.28% share of the United States population, support a reasonable inference that Defendant's national customer, patient, prospect, event, subscription, and SMS databases include thousands of North Carolina consumers. Among those North Carolina consumers are more than 100 who opted out by "STOP" or a similar instruction and thereafter received or were targeted for additional text solicitations. The members of the Classes are therefore so numerous that joinder of all members is impracticable.

52. Identification of the Class members is a matter capable of ministerial determination from Defendant's and its vendors' records, including SMS transmission logs, campaign IDs, message templates and content, recipient telephone numbers, sender numbers and short codes, timestamps, consent and STOP logs, account-level SMS status, internal do-not-call records, CRM and patient records, website form submissions, Shopify, order, and subscription records, billing and shipping addresses, North Carolina area codes, IP addresses, geolocation data, and customer-service or advisor contact logs.

**<u>COMMON QUESTIONS OF LAW AND FACT</u>**

53. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

a) Whether Defendant violated 47 C.F.R. § 64.1200(d);

b) Whether Defendant violated 47 U.S.C. § 227(c);

c) Whether Defendant violated N.C. Gen. Stat. § 75-102(b);

d) Whether Defendant violated the TCPA;

e) Whether Defendant violated the NCTSA;

f) Whether Defendant's conduct was knowing and willful;

g) Whether Defendant adhered to requests by Class members to stop sending text messages to their telephone numbers;

h) Whether Defendant keeps records of text recipients who revoked consent to receive texts;

i) Whether Defendant has any written policies for maintaining an internal do not call list;

j) Whether Defendant violated the privacy rights of Plaintiff and members of the class;

k) Whether Defendant complies with the National Do Not Call Registry;

l) Whether the purpose of Defendant's text messages was to solicit the sale of its goods, products, services, and events; and

m) Whether Defendant is liable for damages, and the amount of such damages.

54. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**<u>TYPICALITY</u>**

55. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

56. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

57. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

58. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

59. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

60. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has

> instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

61. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity that, like Defendant, sends telemarketing text messages to wireless telephone numbers.

62. Plaintiff and the Class Members are residential telephone subscribers who received more than one telemarketing text message from Defendant, who has failed to implement adequate procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests

within a reasonable period of time that does not exceed 30 days, and its lack of a written policy for maintaining an internal do-not-call list.

63. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

64. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

65. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

66. Defendant failed to honor Plaintiff's and the Class members' opt-out requests within a reasonable period time.

67. In violation of section 64.1200(d)(1), Defendant does not have written policy for maintaining a do-not-call list.

68. In violation of section 64.1200(d)(2), Defendant does not train its personnel engaged in telemarketing on the existence and use of a do-not-call-list with respect to inbound "stop" text messages like those sent by Plaintiff and the Class members. Defendant's lack of adequate training resulted in Plaintiff and the Class members receiving text messages after they texted Defendant with "stop" or similar opt-out instructions.

69. In violation of section 64.1200(d)(3), Defendant failed to record Plaintiff's and the Class Members' opt-out requests on a do-not-call list, and failed to honor Plaintiff's and the Class Members' do-not-call requests within a reasonable time.

70. In violation of section 64.1200(d)(6), Defendant does not maintain a do-not-call list consisting of consumers' inbound "stop" text message requests to not receive text messages, and therefore does not honor those requests within a reasonable period of time.

71. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages for each and every negligent violation.

**COUNT II**
**Violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the DNC Class)**

72. Plaintiff re-alleges and incorporates the allegations in paragraphs 1 – 62 as if fully set forth herein.

73. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

74. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

75. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

76. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

77. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

78. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

**COUNT III**
**Violations of N.C. Gen. Stat. § 75-102(b) and (d)**
**(On Behalf of Plaintiff and the NCTSA Class)**

79. Plaintiff re-alleges and incorporates the allegations in paragraphs 1 – 62 as if fully set forth herein.

80. Plaintiff is a "telephone subscriber" entitled to bring a claim under the NCTSA. *See* N.C. Gen. Stat. §§ 75-101(11); 75-105(b).

81. The NCTSA expressly applies to text communications. Under N.C. Gen. Stat. § 75-101(9), a "telephone solicitation" includes a text communication over a telephone line, wireless telephone network, or commercial mobile radio service made for the purpose of soliciting or encouraging the purchase of property, goods, or services.

82. Defendant is a "telephone solicitor" doing business in North Carolina and making or attempting to make telephone solicitations in this state. *See* N.C. Gen. Stat. § 75-101(4), (10).

83. Defendant's text messages sent to Plaintiff and the Class Members are "telephone solicitation[s]" because the purpose of those messages was to encourage Plaintiff and the Class Members to purchase Defendant's goods, products, services, or events. *See* N.C. Gen. Stat. § 75-101(9)

84. In violation of section 75-102(b), Defendant sent text message telephone solicitations to Plaintiff and the Class Members after they communicated to Defendant their desire to receive no further telephone solicitations from Defendant. *See* N.C. Gen. Stat. § 75-102(b).

85. In violation of section 75-102(d), Defendant failed to implement systems and written procedures to prevent further telephone solicitations to any telephone subscriber who has asked not to be called again at a specific number or numbers. See N.C. Gen. Stat. § 75-102(d).

86. In violation of section 75-102(d), Defendant failed to train, monitor, and enforce compliance by its employees and monitor and enforce compliance by its independent contractors in those systems and procedures. *See* N.C. Gen. Stat. § 75-102(d).

87. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to and seek $500 in damages for the first violation, $1,000 for the second violation, and $5,000 for the third and any other violation that occurs within two years of the first violation, in addition to injunctive relief and attorneys' fees and costs. *See* N.C. Gen. Stat. § 75-105(b), (d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of each Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of each Class as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA and NCTSA;

c) An award of attorney's fees under the NCTSA;

d) An order declaring that Defendant's actions, as set out above, violate the TCPA and NCTSA;

e) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: June 2, 2026

Respectfully submitted,


**HIRALDO P.A.**

*By: /s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
246 Shore Court
Lauderdale-by-The-Sea, Florida 33308
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**EISENBAND LAW, P.A.**

*/s/ Michael Eisenband*
Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.732.2792
*Attorneys for Plaintiff*